UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Plainfield Specialty Holdings II, Inc.,

    Plaintiff,

v.

Children's Legal Services, PLLC; Kenneth A. Stern; Villari, Brandes, Klein & Stern; and Villari, Brandes & Klein, P.C.,

    Defendants.

                               /

Case No. 08-14905

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT VILLARI'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [148, 151, 188, 189] AND DENYING PLAINTIFF'S MOTION TO ORDER COMPLIANCE WITH THIS COURT'S ORDERS AND ORDER SUSPENSION OF THE VILLARI-CLS ARBITRATION [154, 194]**

This matter comes before the Court on Defendant Villari, Brandes & Kline, P.C.'s (Villari) renewed motion to compel arbitration and stay proceedings and Plaintiff's renewed motion to order Villari to comply with this Court's orders and suspend the Villari-CLS arbitration. The Court denied without prejudice the parties' original motions because the parties expressed a willingness to discuss their issues outside of Court. The parties did not resolve their issues, necessitating these refiled/renewed motions. For the reasons set forth below, Villari's motion is GRANTED and Plaintiff's motion is DENIED.

The dispute between Villari and CLS, as discussed below, may proceed to arbitration; the Court therefore STAYS all proceedings related to the claims that are subject to the arbitration. The Court further ORDERS that the Custodian shall control and direct the defense of CLS in the arbitration proceeding, costs for which shall be paid out of the

lockbox account and treated as other such disbursements per previous Orders of the Court.[1]

IT IS FURTHER ORDERED that Villari shall continue to hold all funds in which Defendants have or may have an interest, whether contingent or not, in its trust account and otherwise not disburse any of the funds without an order of this Court.[2]

## I. Facts

Villari is a Pennsylvania law firm engaged in representing plaintiffs in medical malpractice cases, particularly those involving birth related injuries. Children's Legal Services, PLLC (CLS), is a Michigan law firm that has historically advertised using its "4MyChild" trademark and related intellectual property for the purpose of generating birth injury medical malpractice cases. CLS would then refer many of these cases to cooperating law firms, like Villari, in exchange for a referral fee.

Villari and CLS have worked together under this cooperating arrangement since the late 1990s. Over the years, Villari and CLS' relationship has been memorialized by written agreements, the most recent of which was executed on May 29, 2007 (2007 V-CLS

---

[1] The Custodian, per previous Order of this Court, is authorized "to employ attorneys ... and other professionals as the Custodian may from time to time deem appropriate." (Order Granting Pl.'s Mot. for Prelim. Inj. at 31 [Docket Text # 85].)

[2] On June 5, 2009, Villari received certain fees arising from the settlement of a case referred to it under the 2007 V-CLS contract. At that time, Villari asserted that no portion of these fees was the property of CLS. Villari, however, offered to hold the fees in escrow pending resolution of the parties' various disputes, and on June 9, 2009, wrote to Mr. Rock suggesting that he serve as the escrowee. (Villari's Resp., Ex. E [Docket Text # 157].) Plainfield objected to Mr. Rock serving as the escrowee and, instead, insisted that Villari concede that the fees belonged to CLS and immediately deposit the fees into the lockbox. "The parties ultimately agreed that the money should be held in the trust account of Villari's counsel, where it and other contested fees remain." (Villari's Resp. at 10-11 [Docket Text # 157].)

contract) and included an initial term of fifteen years. (Villari's Resp. at 5; Ex. C [Docket Text # 157].)

Approximately four months later, in September, 2007, CLS—claiming that Plainfield withdrew its funding—ceased all television advertising in the Villari marketing area thereby allegedly breaching the 2007 V-CLS contract. As a result of that alleged breach, Villari and CLS are currently engaged in a contractual dispute focusing on, *inter alia*, their respective entitlements to certain legal fees that have been and will be received by Villari from cases referred to it by CLS.

> Based on the established track record of return per dollar of CLS advertising in the Villari territories, Villari contends that if CLS had advertised as required, or if (upon its failure to do so) CLS had provided Villari with the 4MyChild commercials and intellectual property so that Villari could do so, Villari would have earned well over $10 million, for which Villari seeks damages against CLS.

(Villari's Resp. at 9 [Docket Text # 157].) Villari is now seeking to compel arbitration between it and CLS to resolve their contractual disputes.

The express terms of the 2007 V-CLS contract include a dispute resolution procedure that provides for the arbitration of any

> dispute between the parties relating to this Amended Agreement, any rights, duties or obligations under this Amended Agreement and/or the breach of this Amended Agreement. ...
>
> This arbitration will be the final and exclusive remedy for any such Dispute.
>
> The award of the arbitrators shall be binding upon the arbitrating Parties.[3]

---

[3] Villari and CLS' former agreement, executed on December 27, 2004, included the same arbitration provision.

(Villari's Resp., Ex. C ¶¶ 29A, D [Docket Text # 157].) Villari has instituted an arbitration proceeding against CLS, and, in its motion to compel arbitration, is requesting the Court to enter an Order compelling the arbitration and staying all proceedings that are subject to the arbitration. Specifically, Villari seeks to arbitrate, *inter alia*, the following issues:

   a. Villari's damage claim against CLS;

   b. Whether Villari is entitled to withhold fees otherwise owing to CLS pending final adjudication of Villari's damage claim against CLS;

   c. Whether referral fees can lawfully be paid to CLS;

   d. In the event Villari is awarded damages against CLS, whether Villari is entitled to recover such damages from the fees otherwise owing to CLS before such fees ever come into the possession or ownership of CLS;

   e. Whether Villari possesses the right of first refusal and the right to purchase the CLS intellectual property as set forth in the December 27, 2004 Agreement;

   f. Whether the amendments set forth in the May 29, 2007 Agreement between Villari and CLS are void and otherwise unenforceable.

(Villari's Mot. at 6 [Docket Text # 151].)

CLS does not contest Villari's motion or its request to invoke the dispute resolution provisions contained in the 2007 V-CLS contract. Plainfield, on the other hand, does. Plainfield is not a party to the 2007 V-CLS contract but, nevertheless, insists that it has the right to preclude Villari and CLS from resolving their dispute through arbitration.

## II. Compel Arbitration Standard

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged . . . refusal of another to arbitrate under a written

4

agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

"The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* But a party "cannot be required to submit to arbitration any dispute that the party has not agreed to so submit." *Bratt Enterprises, Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003); s*ee also Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (internal citations omitted) (noting that "arbitration under the Federal Arbitration Act is a matter of consent, not coercion").

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language

5

itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

When determining "whether the arbitration clause itself was validly obtained," state contract law is applied, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003). State law inconsistent with the FAA's "broad principle of enforceability" of arbitration agreements, however, is pre-empted by federal arbitration law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 661, 688 (1996); *Stout*, 228 F.3d at 716.

If a court determines that the cause of action is covered by an arbitration clause, Section 3 of the FAA provides that "it must stay the proceedings until the arbitration process is complete." *Fazio*, 340 F.3d at 392 (citing 9 U.S.C. § 3).

### III. Analysis

The dispute resolution provisions in the 2007 V-CLS contract fall within the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*. Section 2 of the FAA provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract.

9 U.S.C. § 2.

Here, the agreement to arbitrate is set forth in a written agreement (the 2007 V-CLS contract) involving commerce and provides that all disputes between Villari and CLS regarding any right, duty, or obligation under the 2007 V-CLS contract, or breach thereof, will be settled through arbitration (*see* Villari's Resp., Ex. C ¶¶ 29A, D [Docket Text # 157].) Moreover, Villari and CLS agree that they entered into a binding agreement to arbitrate

6

their disputes, and Villari and CLS have also agreed that these particular disputes are subject to arbitration. Plainfield, on the other hand, objects to the Villari-CLS arbitration.

Plainfield—although not disputing that the FAA generally favors arbitration and not contesting the scope of the arbitration provision in the 2007 V-CLS contract—seeks to avoid any arbitration between Villari and CLS. Although Plainfield objects to the arbitration, it has not provided any grounds that "exist at law or in equity for the revocation of [the 2007 V-CLS contract]." 9 U.S.C. § 2. Plainfield contends that the Court should deny Villari's motion "to safeguard and preserve the Collateral." (Pl.'s Resp. at 9 [Docket Text # 153]; *see also id.* at 18 ("the arbitration should be suspended because the res is *in custodia legis*, because the veracity of the arbitration proceeding is markedly suspect, and in light of the Court's prior ruling expressing concern over CLS' ability to safeguard the Collateral.").)

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 510 (6th Cir. 2004) (quoting *Green Tree Finance Corp. of Alabama v. Randolph*, 531 U.S. 79, 92 (2000)). Plainfield's arguments in opposition to arbitration do not satisfy this burden.[4] *See Stout*, 228

---

[4] Plainfield provides four arguments opposing Villari's motion to compel arbitration: (1) that the proposed arbitration is a "sham" as Villari and CLS will collude together to deprive Plainfield of its Collateral; (2) that Villari's motion to compel arbitration seeks to deprive this Court of jurisdiction over property *in custodia legis*, and allowing the arbitration to proceed would deprive Plainfield of the very protection of the collateral this Court sought to ensure by the appointment of the Custodian; (3) that the arbitration should be suspended on the grounds of laches; and (4) that the arbitration should be suspended under the All Writs Act, 28 U.S.C. § 1651. (Pl.'s Resp. at 8, 16-17 [Docket Text # 153].)

The Court finds Plainfield's arguments in opposition to arbitration unpersuasive. For example, Plainfield has not offered sufficient non-conclusory evidence to support its contention that the arbitration will be the product of "collusion" or a "sham." Plainfield has not demonstrated, under the doctrine of laches, the requisite delay and prejudice. *See, e.g.*, *Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). Plainfield has not established that the doctrine of *custodia*

F.3d at 714 ("Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.") The Court does, however, recognize Plainfield's concerns regarding the preservation of its Collateral.

In order to safeguard and preserve the Collateral, Plainfield proposes that this Court divest CLS' control over the arbitration and designate the Custodian to proceed in the arbitration on CLS' behalf. (Pl.'s Reply at 6 ("Plainfield requests that if the Court does not suspend the arbitration, the Court should permit Mr. Rock, as the CLS custodian, to *conduct* the arbitration.") (emphasis in original).) Neither Villari nor CLS object to this condition. (*See* CLS' Resp. at 6 ("CLS agreed (months ago, in fact) to allow Mr. Rock to control the arbitration."); *id.* at 8 ("To ensure the integrity of the process and prevent unfounded accusations (like those in Plainfield's brief) CLS and Mr. Stern sought to free the arbitration of the slightest hint or taint of alleged 'collusion.' CLS therefore suggested that Mr. Rock oversee the arbitration process, including selecting independent counsel *if he* deemed it necessary. The parties discussed CLS' proposal, Plainfield agreed and the parties exchanged draft orders.") (emphasis in original); Villari's Resp. at 5 ("CLS (with Villari's endorsement) *already* agreed to allow Mr. Rock to monitor CLS' conduct of its defense.") (emphasis in original).) Accordingly, the Court appoints the Custodian to control and direct the defense of CLS in the arbitration proceedings.

---

*legis* is applicable here to prevent arbitration in a non-bankruptcy related matter, nor has it demonstrated that the arbitration will impermissibly interfere with this Court's jurisdiction over this matter. Finally, the All Writs Act has no application where a statute applies to the issue under consideration, and here the issue of the enforceability of a contractual arbitration provision is addressed by the FAA. *See Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 43 (1985).

**IV. Conclusion**

For the foregoing reasons, Villari's motion is GRANTED and Plaintiff's motion is DENIED.


       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: March 2, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 2, 2011, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager